# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

|  |  |
|---|---|
| RONALD R. HERRERA-GOLLO, | |
| **Plaintiff,** | |
| v. | CIVIL NO. 15-1771 (JAG) |
| SEABORNE PUERTO RICO, LLC, *et al.*, | |
| **Defendant.** | |

## OPINION AND ORDER

GARCIA-GREGORY, D.J.

This matter is before the Court on Defendant Seaborne Puerto Rico, LLC's ("Defendant") Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Docket No. 8. Plaintiff Ronald Herrera-Gollo ("Plaintiff") timely opposed. Docket No. 9. Defendant filed a reply, Docket No. 11, and Plaintiff sur-replied, Docket No. 12-1. Plaintiff sued Defendant, alleging illegal alienage discrimination under 42 U.S.C. § 1981, and several violations of Puerto Rico laws. Docket No. 1. The issue before the Court is whether Plaintiff's claims should be dismissed because § 1981 does not provide a cause of action for private alienage discrimination. The Court holds that § 1981 does provide a cause of action against private alienage discrimination. Accordingly, the Court DENIES Defendant's Motion to Dismiss.

# BACKGROUND[1]

Plaintiff is a lawful United States resident of Venezuelan nationality. Docket No. 1. At all relevant times, he had a current green card, which permitted him to legally live and work in the United States. *Id.* Plaintiff applied, and was extended a job offer, to become a flight attendant for Defendant. *Id.* However, he was later rejected solely because he was not a U.S. citizen, based on Defendant's policy to hire only U.S. citizens. *Id.* Plaintiff sued Defendant on June 8, 2015 alleging that he was illegally discriminated against based on his alienage in violation of 42 U.S.C. § 1981. Plaintiff also asserts violations of Puerto Rico law under Puerto Rico Act No. 100 of June 30, 1959, P.R. Laws Ann., tit. 29 § 146 *et seq.*, and Article 1206 of the Puerto Rico Civil Code, P.R. Laws Ann., tit. 29 § 3371 *et seq.*

# STANDARD OF REVIEW

A defendant may move to dismiss an action for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). To survive dismissal under this standard, a complaint must allege "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1967 (2007). According to *Twombly*, the complaint must state enough facts to "nudge [the plaintiff's] claims across the line from conceivable to plausible." *Id.* at 1974. Therefore, to preclude dismissal pursuant to Fed. R. Civ. P. 12(b)(6), the complaint must rest on factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* at 1965.

---

[1] For purposes of Defendant's Motion to Dismiss, all facts are taken from Plaintiff's Complaint, Docket No. 1, and are presumed to be true.

At the motion to dismiss stage, courts accept all well-pleaded factual allegations as true, and draw all reasonable inferences in the plaintiff's favor. *See Correa-Martinez v. Arrillaga-Belendez*, 903 F.2d 49, 51 (1st Cir. 1988). Thus, the plaintiff bears the burden of stating factual allegations regarding each element necessary to sustain recovery under some actionable theory. *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir. 1988). Courts need not address complaints supported only by "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like." *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996).

## ANALYSIS

The issue before us concerns the scope of the protections afforded by 42 U.S.C. § 1981. Specifically, the Court considers whether § 1981 provides a cause of action for private alienage discrimination, meaning discrimination by a private party against a person for not being a U.S. citizen.[2] Defendant argues that § 1981 does not provide a cause of action for alienage discrimination, and thus Plaintiff's § 1981 claim should be dismissed. Docket No. 8 at 3–8. Defendant then argues that since Plaintiff would have no remaining federal claim, the Court should also dismiss Plaintiff's supplemental Puerto Rico law claims. *Id.* at 8–9. Plaintiff counters that § 1981 does provide a cause of action for alienage discrimination and thus Defendant's Motion to Dismiss should be denied. Docket No. 9.

---

[2] Although the parties do not draw any distinction between public and private alienage discrimination in their briefs, prior courts have found this distinction to be important. *Compare Duane v. GEICO*, 37 F.3d 1036 (4th Cir. 1994) (holding that the pre-1991 § 1981 prohibited both public and private alienage discrimination), *with Bhandari v. First Nat. Bank of Commerce*, 829 F.2d 1343 (5th Cir. 1990) (holding that the pre-1991 § 1981 only prohibited public alienage discrimination). Thus, since the allegations in this case concern conduct by a private party, this Court must specifically consider whether § 1981 prohibits private alienage discrimination.

Section 1981 prohibits certain types of discrimination in, *inter alia*, the making and enforcement of contracts, including employment contracts. *See* 42 U.S.C. § 1981. It is clear that § 1981 protects against discrimination on the basis of race, *Johnson v. Ry. Exp. Agency, Inc.*, 421 U.S. 454, 459 (1975), and that this protection extends to private, as well as public discrimination, *Patterson v. McLean Credit Union*, 491 U.S. 164, 172 (U.S. 1989). The prohibition against racial discrimination also encompasses discrimination based on ancestry or ethnic characteristics. *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613 (1987). The First Circuit has never considered whether § 1981 prohibits discrimination on the basis of alienage, let alone whether that prohibition also extends to private actors. As to the second part, § 1981 was amended in 1991 to provide that "[t]he rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law." 42 U.S.C. § 1981(c).

The Court holds that § 1981 does provide a cause of action against private alienage discrimination. First, this Court examines § 1981 prior to 1991. Based on the text of § 1981 and prior cases, the Court holds that, before the 1991 amendments, § 1981 at least prohibited public alienage discrimination. Second, the Court holds that the 1991 amendments extended § 1981's protections to private, as well as public, alienage discrimination, if that was not already the case. Thus, § 1981 does provide a cause of action against private alienage discrimination. Accordingly, Plaintiff's § 1981 claim remains. Since Plaintiff's federal claim remains, Plaintiff's supplemental Puerto Rico law claims also remain.

I.    **Alienage Discrimination Under § 1981 Prior to 1991 Amendments**

   A.  **§ 1981's Text**

Section 1981's language strongly supports the position that § 1981 does prohibit some form of alienage discrimination. The statute provides, in relevant part, that "*[a]ll persons* within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by *white citizens.*" 42 U.S.C. § 1981 (a) (emphasis added). The statute's juxtaposition of the terms "all persons" and "white citizens" supports the notion that the statute prohibits alienage discrimination, as well as race discrimination. *See Sagana v. Tenorio*, 384 F.3d 731, 737-38 (9th Cir. 2004), *as amended* (Oct. 18, 2004); *Anderson v. Conboy*, 156 F.3d 167, 171 (2d Cir. 1998). Had Congress intended to exclude alienage discrimination from § 1981, it could have compared "all persons" to "white persons", or "all citizens" to "white citizens." Instead Congress amended the statute in its 1870 reenactment of the 1866 Civil Rights Act and replaced the term "all citizens" with the current language of "all persons." *See Sagana*, 384 F.3d at 737. This change merits the conclusion that § 1981 also protects against discrimination on the basis of alienage, as a person who is discriminated against because he is not a citizen would not have "the same right ... as is enjoyed by white citizens." *See* 42 U.S.C. § 1981.

Defendant argues that § 1981's use of the term "all persons" only indicates that aliens and citizens are equally entitled to invoke the protections of § 1981, but it does not necessarily merit the conclusion that the statute protects against alienage discrimination. Docket No. 11 at 3-4. However, Defendant's argument fails to account for the juxtaposition of the first term "all

*persons*" with the subsequent term "white *citizens*." Had Congress only intended the statute to extend its protections to aliens and not to protect against alienage discrimination, it could have paired "all persons" with "white persons," thereby providing that the statute only protects persons, including aliens, who are discriminated against for not being white. Instead, the current distinction between "all persons" and "white citizens" also extends the statute's protections to persons who are discriminated against because they are not citizens. For example, if a white alien is discriminated against because he is not a citizen, he would not have "the same right … as is enjoyed by white citizens." *See* 42 U.S.C. § 1981. Thus, the text of the statute supports the conclusion that § 1981 protects against alienage discrimination.

### B.   Caselaw

Existing caselaw also strongly supports the position that § 1981 at least prohibits public alienage discrimination. Although the Supreme Court has never squarely held that § 1981 prohibits alienage discrimination, it has cited § 1981 twice in invalidating state laws that discriminated against aliens. *See Graham v. Richardson*, 403 U.S. 365 (1971) (invalidating state welfare laws that either denied welfare benefits to aliens or denied benefits to aliens who had not complied with a residency requirement); *Torao Takahashi v. Fish & Game Comm'n*, 334 U.S. 410 (1948) (invalidating a state law that denied the issuance of a commercial fishing license to "any person ineligible to citizenship").

In *Takahashi*, while it is unclear if the Court's holding rested on its interpretation of § 1981, the Court provided the following analysis: "[t]he protection of [§ 1981] has been held to extend to aliens as well as to citizens. Consequently the section and the Fourteenth Amendment

on which it rests in part protect 'all persons' against state legislation *bearing unequally upon them either because of alienage* or color." 334 U.S. at 419-20 (emphasis added). Similarly in *Graham*, the Court's holding rested on the Equal Protection Clause and on Congress's "exclusive federal power" to regulate the entry and stay of aliens. 403 U.S. at 377-380. In expanding on the latter justification, the Court provided: "[t]he protection of [§ 1981] has been held to extend to aliens as well as to citizens . . . . State laws that restrict the eligibility of aliens for welfare benefits *merely because of their alienage* conflict with these overriding national policies." *Id.* at 378 (emphasis added). Therefore, the Supreme Court in *Takahashi* and *Graham* has strongly indicated that § 1981 does at least prohibit public alienage discrimination. Moreover, the prevailing view is that these two cases are dispositive on this issue. *See, e.g., Sagana v. Tenorio*, 384 F.3d 731, 739 (9th Cir. 2004), *as amended* (Oct. 18, 2004) ("The Supreme Court has held that § 1981 prohibits alienage discrimination.") (citing *Takahashi*, 334 U.S. at 419–20); *Duane v. GEICO*, 37 F.3d 1036, 1040 (4th Cir. 1994) ("The Supreme Court has established that § 1981 prohibits at least public discrimination against aliens") (citing *Graham*, 403 U.S. at 377; *Takahashi*, 334 U.S. at 419); *see also Bhandari v. First Nat. Bank of Commerce*, 494 U.S. 1061 (1990) (White, J., dissenting from denial of certiorari) ("Prior cases," citing *Graham*, 403 U.S. at 377 and *Takahashi*, 334 U.S. at 419, "have indicated that § 1981 prohibits official discrimination against aliens . . . . Certiorari should be granted to settle whether § 1981 proscribes private alienage discrimination.").

In addition, all Circuits Courts that have considered this issue have held that § 1981 at least covers public alienage discrimination. *See Sagana v. Tenorio*, 384 F.3d 731 (9th Cir. 2004) (holding that § 1981 prohibits public alienage discrimination); *Anderson v. Conboy*, 156 F.3d 167 (2d

Cir. 1998) (holding that § 1981 prohibits both public and private alienage discrimination); *Duane v. GEICO*, 37 F.3d 1036 (4th Cir. 1994) (same); *Bhandari v. First Nat. Bank of Commerce*, 829 F.2d 1343 (1990) (holding that § 1981 only prohibits public alienage discrimination).

Despite this overwhelming precedent, Defendant argues that since § 1981 is the "companion section" to § 1982, that § 1981 should be construed like § 1982 to only protect against racial discrimination.[3] In support of this contention, Defendant cites the Supreme Court's decision in *CBOCS West, Inc. v. Humphries*, 553 U.S. 442 (2008) for the proposition that the Court "has 'long construed' both sections similarly." Docket No. 11 at 2. However, Defendant's reliance on § 1982 is misplaced. Section 1982, although similar to § 1981, provides that "*[a]ll citizens* of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens . . . ." The "all citizens" language used at the beginning of the statute makes it clear that the protections of § 1982 only extend to United States *citizens* who are discriminated against for not being "*white* citizens." In contrast, § 1981's use of the term "all persons" indicates that its scope is much broader than § 1982's. *See supra* at 5-6. Moreover, the Supreme Court's holding in *Humphries* is easily distinguishable because the textual distinction between "all persons" in § 1981 and "all citizens" in § 1982 was insignificant to the analysis of the issue before the *Humphries* Court—whether § 1981 encompassed retaliation claims, *see* 553 U.S. at 446. Therefore, the Court did not have to consider the importance of this textual distinction. In contrast, the distinction

---

[3] The Court is aware of only two cases that support this reasoning. *See Murtaza v. New York City Health & Hosps. Corp.*, No. 97-CV-4554, 1998 WL 229253 (E.D.N.Y. 1998); *Rios v. Marshall*, 530 F. Supp. 351 (S.D.N.Y. 1981). However, both cases were later overruled by the Second Circuit in *Anderson v. Conboy*, 156 F.3d 167, 171 (2d Cir. 1998).

between "all persons" and "all citizens" is of critical importance to the current issue of whether the statute prohibits alienage discrimination. Thus, the fact that § 1982 does not cover alienage discrimination is not dispositive of whether § 1981 covers it.

For the reasons stated above, this Court finds that both the pre-1991 language of § 1981 and prior caselaw support the position that § 1981 at least prohibited public alienage discrimination.

## II.    1991 Amendments and Private Alienage Discrimination

The Court now considers whether § 1981's prohibition of alienage discrimination extends to discrimination by private parties, in addition to governmental discrimination. Prior to the 1991 amendments, the only two Circuit Courts that had considered this issue were split. *Compare Duane v. GEICO*, 37 F.3d 1036 (4th Cir. 1994) (holding that the pre-1991 § 1981 prohibited both public and private alienage discrimination), *with Bhandari v. First Nat. Bank of Commerce*, 829 F.2d 1343 (5th Cir. 1990) (holding that the pre-1991 § 1981 only prohibited public alienage discrimination). However, the Civil Rights Act of 1991 amended § 1981 to include a new subsection (c) that expressly states that "[t]he rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law." 42 U.S.C. § 1981(c). Thus, the 1991 amendments' plain language unambiguously extended §

1981's protections—including its protection against alienage discrimination—to discrimination by private parties, if this was not already the case.[4]

Therefore, the Court holds that § 1981 does provide a cause of action against private alienage discrimination. Accordingly, Defendant's Motion to Dismiss is denied as to Plaintiff's § 1981 claim. Since Plaintiff's federal § 1981 claim remains, Defendant's request to dismiss Plaintiff's supplemental Puerto Rico law claims is also denied.

## CONCLUSION

In view of the foregoing, Defendant's Motion to Dismiss is DENIED.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 24th day of February, 2016.

s/ Jay A. Garcia-Gregory
JAY A. GARCIA-GREGORY
United States District Judge

---

[4] Since the Court finds that the plain language of the 1991 amendments is unambiguous, there is no need for further analysis. Moreover, Defendant does not argue that § 1981's alienage discrimination prohibition only applies to public conduct. Thus, the argument has not been properly briefed and is waived. *See United States* v. *Zannino*, 895 F.2d 1, 17 (1st Cir. 1990). However, for those who wish to self-indulge, the Second Circuit's opinion in *Conboy*, 156 F.3d at 171, offers ample intellectual fodder on this issue, analyzing the statute's legislative history and possible conflict with immigration laws.