IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

RONALD R. HERRERA GOLLO,

   **Plaintiff,**

       v.

SEABORNE PUERTO RICO, LLC, *et al.*,

   **Defendants.**

CIVIL NO. 15-1771 (JAG)

OPINION AND ORDER

GARCIA-GREGORY, D.J.

     This matter is before the Court on Defendant Seaborne Puerto Rico, LLC's ("Defendant" or "Seaborne Puerto Rico") Motion to Compel Arbitration and Dismiss or, in the alternative, stay this action pending the completion of Arbitration ("Motion to Compel Arbitration") under the Federal Arbitration Act (the "FAA" or the "Act"), 9 U.S.C. § 1 *et seq*. Docket No. 14. Plaintiff Ronald Herrera-Gollo ("Plaintiff") timely opposed. Docket No. 15. Defendant filed a reply, Docket No. 16, and Plaintiff sur-replied, Docket No. 30-1. The issue before the Court is whether it should compel Plaintiff to arbitrate his dispute with Seaborne. The Court holds that it should. Accordingly, the Court GRANTS Defendant's Motion to Compel Arbitration, and accordingly dismisses Plaintiff's claims.

BACKGROUND

     According to Plaintiff's complaint, Plaintiff is a lawful United States resident of Venezuelan nationality. Docket No. 1. At all relevant times, he had a valid green card, which allowed him to legally live and work in the United States. *Id.* On November 8, 2013, Plaintiff

completed a written job application to become a flight attendant for Defendant. Docket No. 14-1. As part of his application, Plaintiff signed an arbitration agreement titled "Applicant Dispute Resolution Agreement," where he agreed to arbitrate any claim arising out of his job application. *Id.* On December 23, 2013, he was extended a job offer, contingent upon successful completion of several requirements, including signing a two year employment contract. Docket No. 15-1. However, Defendant did not ultimately hire Plaintiff, allegedly because he was not a United States citizen, based on Defendant's policy to hire only citizens. Docket No. 1.

Plaintiff sued Defendant on June 8, 2015 alleging that he was illegally discriminated against based on his alienage in violation of 42 U.S.C. § 1981. Plaintiff also asserted violations of Puerto Rico law under Puerto Rico Act No. 100 of June 30, 1959, P.R. Laws Ann., tit. 29 § 146 *et seq.*; and Article 1206 of the Puerto Rico Civil Code, P.R. Laws Ann., tit. 29 § 3371 *et seq.*

On August 21, 2015, Defendant filed a Motion to Dismiss all of Plaintiff's claims for failure to state a claim under Fed. R. Civ. P. 12(b)(6). Docket No. 8. Defendant's motion argued that Plaintiff's 42 U.S.C. § 1981 claim should be dismissed because § 1981 did not provide a cause of action for private alienage discrimination. *Id.* Defendant further argued that Plaintiff's Puerto Rico law claims should be dismissed since Plaintiff would have no remaining federal claims. *Id.* Plaintiff opposed the motion, Docket No. 9, Defendant replied, Docket No. 11, and Plaintiff sur-replied, Docket No. 12-1. On February 24, 2016, the Court issued an Opinion and Order denying Defendant's Motion to Dismiss, holding that § 1981 did provide a cause of action for private alienage discrimination. Docket No. 13.

Following the Court's Opinion and Order, rather than answer Plaintiff's complaint, Defendant proceeded to file a Motion to Compel Arbitration pursuant to the FAA, 9 U.S.C. § 1 *et*

*seq.*. Docket No. 14. Defendant's motion asks the Court to compel Plaintiff to arbitrate his dispute with Defendant pursuant to the arbitration agreement he signed. *Id.* Defendant also moves for the Court to dismiss this action or, in the alternative, stay the proceedings pending the completion of arbitration. *Id.*

## ANALYSIS

The issue before the Court concerns whether Plaintiff should be compelled to arbitrate his claims against Defendant. Defendant argues that Plaintiff agreed to arbitrate all claims arising out of his job application with Defendant, which would include all of his claims in this suit. Docket No. 14. Plaintiff does not contest the existence of such an arbitration agreement, nor does he contest that his claims are within the scope of the agreement. Instead, Plaintiff contends he should not be compelled to arbitrate his claims for three reasons: (a) that Defendant waived its right to arbitration by delaying in seeking arbitration; (b) that Defendant cannot invoke the arbitration clause, because it is not the entity that signed the agreement and it was not incorporated when the contract was signed; and (c) that Defendant is estopped from enforcing the arbitration agreement in his job application, because it was substituted by the one-page employment offer that Plaintiff signed, which did not contain an arbitration agreement. Docket Nos. 15, 30-1. Defendant disputes all of Plaintiff's arguments. Docket No. 16.

The Court holds that Plaintiff should be compelled to arbitrate his claims against Defendant. The Court begins by providing an overview of the FAA, 9 U.S.C. § 1 *et seq.*, and the broad federal policy in favor of arbitration. Then, the Court concludes that the dispute between the parties falls within the scope of the arbitration agreement. As to Plaintiff's three arguments

against requiring arbitration, the Court holds that Defendant (a) did not waive its right to arbitration; (b) can enforce the arbitration agreement; and (c) is not estopped from enforcing the arbitration by the one-page employment offer.

## I. The Federal Arbitration Act

Congress has enacted a strong policy favoring arbitration. *See Soto–Alvarez v. AIMCO*, 561 F. Supp. 2d 228, 230 (D.P.R. 2008). It passed the FAA in order to overcome a history of judicial hostility towards arbitration agreements. *Campbell v. Gen. Dynamics Gov't Sys. Corp.*, 407 F.3d 546, 551 (1st Cir. 2005) (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991)). In the Supreme Court's words, the goal of the FAA is to "place [arbitration] agreements upon the same footing as other contracts." *Allied–Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 271 (1995) (citations and internal quotation marks omitted).

Under the FAA, a written agreement to arbitrate a dispute arising out of a commercial transaction is judicially enforceable. 9 U.S.C. §§ 1, 2. Section 2 explicitly provides that a written agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* The federal policy in favor of arbitration is so strong that the Supreme Court has interpreted the FAA to preempt contrary state law, explaining that the Act "withdrew the power of the States to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984).

Nonetheless, arbitration is a matter of contract law and a party can only be made to submit to arbitration those disputes that he has agreed so to submit. *Painewebber Inc. v. Elahi*, 87 F.3d 589,

594 (1st Cir. 1996) (citing *AT & T Tech., Inc. v. Commc'n Workers of Am.*, 475 U.S. 643 (1986)). Thus, the question here is whether the parties agreed and intended to arbitrate the claims before the Court, which is an issue for judicial determination. *AT & T Tech., Inc.*, 475 U.S. at 648-49. "Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 25. This brings the Court to the relevant provisions of the arbitration agreement and its relevance to the present dispute.

## II. The Arbitration Agreement and the Parties' Dispute

As a preliminary matter, the dispute in this case falls within the scope of the arbitration agreement Plaintiff signed.[1] It states:

> 1. ARBITRATION. Except as provided below in this Section, all claims, controversies or disputes (collectively referred to as "claims" for purposes of this Agreement) against the Company, its shareholders or subsidiary or parent or affiliated companies, and their and Company's officers, directors, employees, and agents (all of the foregoing shall be collectively referred to as "Company" for purposes of this Agreement) ***arising out of or in any way relating to Applicant's application for employment*** by the Company . . . ***shall be resolved solely and exclusively by arbitration as provided in this Agreement.***

Docket No. 14-1 (emphasis added). Furthermore, the agreement specifically lists certain statutes under which any claims shall be arbitrable, which includes claims under "the Civil Rights Act of 1866, 42 U.S.C. § 1981 . . . ." *Id.*

---

[1] Although Plaintiff does not seem to contest this point in its briefs, the Court believes it is important to remove any doubt as to this issue.

Plaintiff's complaint seeks damages stemming from Defendant's alleged discriminatory acts in evaluating Plaintiff's job application. Docket No. 1. Plaintiff alleges that the only reason he was not given a job by Defendant was because Plaintiff was not a United States citizen, and therefore, that Defendant discriminated against him because of his alienage, as. *Id.* Thus, all of Plaintiff's claims "arise out of" Plaintiff's job application. These are precisely the types of claims that Plaintiff agreed to arbitrate. In addition, Plaintiff's complaint is primarily based on 42 U.S.C. § 1981, which is explicitly listed in the agreement as one of the types of claims that is arbitrable. Thus, the dispute here falls within the scope of the arbitration agreement.

The Court now turns to Plaintiff's three arguments as to why he should not be compelled to arbitrate his claims.

   a. **Waiver**

Plaintiff argues that Defendant waived its right to arbitration by filing, and litigating to adjudication, its Motion to Dismiss Plaintiff's claims, before seeking to enforce arbitration. Docket Nos. 15, 30-1. The Court disagrees. Given the strong federal policy in favor of arbitration, along with the preliminary procedural posture of this case, the Court holds that the factors promulgated by the First Circuit lead to the conclusion that Defendant did not waive its right to arbitration.

Parties are free to waive their rights to arbitration and present their dispute to a court. *See Jones Motor Co. v. Chauffeurs, Teamsters & Helpers Local Union No. 633 of New Hampshire*, 671 F.2d 38, 42 (1st Cir. 1982) (hereinafter referred to as "*Chauffers*"). Such a waiver may be express or implied. *See Navieros Inter-Americanos, S.A. v. M/V Vasilia Exp.*, 120 F.3d 304, 316 (1st Cir. 1997). However, "courts are consistently mindful of the strong federal policy favoring arbitration," and thus "any doubt

Civil No. 15-1771 (JAG)                                                                                          7

concerning arbitrability 'should be resolved in favor of arbitration . . . .'" *Creative Sols. Grp., Inc. v. Pentzer Corp.*, 252 F.3d 28, 32 (1st Cir. 2001) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 (1983)). Accordingly, the First Circuit has repeatedly stated that "[w]aiver is not to be lightly inferred, and mere delay in seeking [arbitration] without some resultant prejudice to a party cannot carry the day." *Id.* (internal quotation marks and citation omitted).

The First Circuit evaluates several factors to determine whether an implied waiver has occurred, including:

> (1) whether the parties participated in a lawsuit or took other action inconsistent with arbitration; (2) whether the litigation machinery has been substantially invoked and the parties [are] well into preparation of a lawsuit by the time an intention to arbitrate [is] communicated; (3) whether there has been a long delay and trial is near at hand; (4) whether the party seeking to compel arbitration has invoked the jurisdiction of the court by filing a counterclaim; (5) whether discovery not available in arbitration has occurred; and, (6) whether the party asserting waiver has suffered prejudice.

*See FPE Found. v. Cohen*, 801 F.3d 25, 29 (1st Cir. 2015). (internal quotation marks and citations omitted). Thus, the Court analyzes these factors in turn.

The first factor weighs in favor of finding waiver. Defendants filed a Motion to Dismiss all of Plaintiff's claims, and litigated it through, before moving to compel arbitration. Docket Nos. 8, 9, 11, 12-1, 13. Defendant's motion raised a complicated legal issue and sought to adjudicate all of Plaintiff's claims. *Id.* This was inconsistent with Defendant's right to arbitrate. *See Hooper v. Advance Am., Cash Advance Centers of Missouri, Inc.*, 589 F.3d 917, 920 (8th Cir. 2009) (finding that the defendant acted inconsistently with its right to arbitrate where it filed a motion to dismiss all of Plaintiff's claims). However, this does not end the matter, as "it is well-established that a party does not waive its right to arbitrate merely by filing a motion to dismiss." *Sharif v. Wellness Int'l*

*Network, Ltd.*, 376 F.3d 720, 726-27 (7th Cir. 2004) (collecting cases, including *Pentzer Corp.*, 252 F.3d at 33).

While factor six, concerning the prejudice to the party asserting waiver, may also slightly weigh in favor of finding waiver, any resulting prejudice is minimal. Plaintiff had to incur time and expenses to oppose Defendant's Motion to Dismiss, and thus they have been slightly prejudiced. *See Joca-Roca Real Estate, LLC v. Brennan*, 772 F.3d 945, 949 (1st Cir. 2014) (suggesting that incurring "out-of-pocket expenses and the value of time" constitutes a showing of prejudice). However, this prejudice is significantly reduced, because Plaintiff has not shown that it would have foregone this time and expense in arbitration, as Plaintiff would have needed to establish the legal validity of its 42 U.S.C. § 1981 claim in arbitration as well. *Cf. Pentzer Corp.*, 252 F.3d at 33 (finding no prejudice resulted from the legal expense of producing records where Plaintiffs would have needed them to support their claim in arbitration regardless). If anything, the Court's Opinion and Order holding that § 1981 does provide a cause of action against private alienage discrimination can only help Plaintiff in arbitration, and it may even provide for a more efficient arbitration, since it brings clarity to a complicated legal issue surrounding Plaintiff's claims. Thus, if Plaintiff has suffered any prejudice from Defendant's delay in seeking arbitration, it is minimal.

Conversely, factors two through five all relate to the procedural posture of the case, and given that this case is still in its nascent stages, they all weigh strongly against finding waiver. Defendant has yet to answer the complaint and there has been no formal discovery. Thus, it cannot be said that "the litigation machinery has been substantially invoked and the parties are well into preparation of a lawsuit." *See Cohen*, 801 F.3d at 29 (factor two); *Cf. Pentzer Corp.*, 252 F.3d at 33 (holding that the "litigation machinery had [not] been substantially invoked" where the

defendant had only filed a motion to dismiss and a single request for production). Trial is not "near at hand," see *Cohen*, 801 F.3d at 29 (factor three), as it has not been scheduled. In fact, before trial can be held, Defendant would have to answer the complaint, the parties would have to conduct discovery, and the court would need to evaluate any dispositive motions. As to factor four, Defendant has not "invoked the jurisdiction of the court by filing a counterclaim." *See id.* Factor five also weighs against waiver, as no "discovery not available in arbitration," or any discovery for that matter, has occurred. *See id.* In essence, despite the time that has passed, this case is still in the very early stages, and thus this weighs heavily against a finding of waiver.

In summary, although Defendant did act inconsistently with its right to arbitrate, its acts were not significant enough to "substantially invoke the litigation machinery," as this case is still in its early stages, discovery has not commenced, and trial is far away. Moreover, any prejudice to Plaintiff, if any, is minimal. Thus, the analysis of the relevant factors advises against finding waiver.

The Court acknowledges that the Eighth Circuit has found the right to arbitration waived in circumstances very similar to ours. See *Hooper*, 589 F.3d at 920 (holding that the defendant waived its right to arbitrate where it filed a motion to dismiss that was "extensive and exhaustive," "drew the district court's attention to multiple matters of first impression," and "encouraged the district court to resolve the parties' entire dispute in" its favor). However, *Hooper* does not warrant a different conclusion in our case. For starters, the parties in *Hooper* had negotiated a proposed scheduling order and discovery plan, and had exchanged initial discovery disclosures. *Id.* As the Court has already illustrated, there has been no discovery conducted or planned. Therefore, our case is less advanced than the case in *Hooper*.

Moreover, this Court does not sit in the Eighth Circuit, and the First Circuit takes a more holistic approach to evaluating whether a right to arbitrate has been implicitly waived. Whereas the Eighth Circuit uses a mechanical three-element standard, *see Hooper*, 589 F.3d at 920 ("We find waiver when the party (1) knew of its existing right to arbitration; (2) acted inconsistently with that right; and (3) prejudiced the other party by its inconsistent actions.") (internal quotation marks omitted), the First Circuit looks at a variety of factors to evaluate the particular circumstances of every case, *see Cohen*, 801 F.3d at 29. Here, although the Eighth Circuit's three elements are seemingly met, the first of these elements is irrelevant under First Circuit precedent, and the second and third elements constitute only two out of the six factors the First Circuit evaluates. As illustrated above, the prejudice factor is weak here, and the remaining four factors all weigh against a finding of waiver.

Moreover, the procedural posture of this case is less advanced than that of cases where the First Circuit has found waiver, and Defendant's conduct here is less substantial than the conduct that court has found to constitute waiver. *See Rankin v. Allstate Ins. Co.*, 336 F.3d 8, 13 (1st Cir. 2003) (finding waiver where the defendant waited until "discovery had closed and the . . . trial date had almost arrived" to invoke right to arbitration); *Caribbean Ins. Servs., Inc. v. Am. Bankers Life Assur. Co. of Florida*, 715 F.2d 17, 18-20 (1st Cir. 1983) (finding waiver where the defendant answered the complaint and entered into a stipulation for a speedy trial in exchange for a "reprieve from a likely contempt finding"); *Chauffeurs*, 671 F.2d at 42-45 (finding waiver where the defendant "engaged in considerable discovery" and submitted the case for summary judgment); *cf. Pentzer Corp.*, 252 F.3d at 32-34 (finding no waiver where the defendant filed a motion to dismiss and a single request for production); *J & S Const. Co. v. Travelers Indem. Co.*, 520 F.2d 809, 809-10 (1st Cir. 1975) (finding no

waiver where the defendant answered, waited thirteen months to request arbitration, and actively participated in discovery).

Lastly, the First Circuit has repeatedly emphasized that waiver should be rarely inferred and all doubts should be resolved in favor of arbitration. *See Pentzer Corp.*, 252 F.3d at 32.

Thus, given the strong federal policy in favor of arbitration, coupled with a holistic evaluation of the factors outlined by the First Circuit, the Court holds that Defendant did not waive its right to arbitration.

### b. Seaborne Puerto Rico

Next, Plaintiff argues that Defendant, Seaborne Puerto Rico, cannot invoke the arbitration clause, because the agreement is signed by Seaborne Virgin Islands, Inc. ("Seaborne Virgin Islands"), not Seaborne Puerto Rico. Docket No. 15 at 6-7. The Court disagrees. There is conflicting precedent as to which jurisdiction's law controls questions of whether a non-signatory to an arbitration agreement can sue to enforce it under the FAA. *Compare Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009) (holding that a litigant who was a non-party to an arbitration agreement can invoke the stay provision of the FAA if the relevant state contract law allows him to enforce the agreement), *with InterGen N.V. v. Grina*, 344 F.3d 134, 143 (1st Cir. 2003) (looking to federal common law to evaluate whether a non-signatory to an arbitration agreement can be compelled to arbitrate pursuant to Chapter 2 of the FAA). In any case, this disagreement is immaterial here, because, as the Court explains below, Seaborne Puerto Rico can enforce the arbitration agreement under both federal common law and Puerto Rico contract law.

Under federal common law, the First Circuit has recognized that "courts have been willing to estop a signatory from avoiding arbitration with a nonsignatory when the issues the

nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed." *Sourcing Unlimited, Inc. v. Asimco Int'l, Inc.*, 526 F.3d 38, 47 (1st Cir. 2008) (collecting cases) (internal quotation marks omitted). Other federal courts have held that a nonsignatory could compel a signatory to arbitrate "because of the close relationship between the entities involved, as well as the relationship of the alleged wrongs to the nonsignatory's obligations and duties in the contract . . . and [the fact that] the claims were intimately founded in and intertwined with the underlying contract obligations." *See Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 779 (2d Cir. 1995) (collecting cases) (internal quotation marks omitted).

Here, it is clear that the underlying dispute is sufficiently intertwined with the arbitration agreement Plaintiff signed. The arbitration agreement was signed as part of Plaintiff's employment application, and it stated that he agreed to arbitrate any matter that arose out of his application. Docket No. 14-1. All of Plaintiff's claims arise specifically from his employment application. Thus, the underlying dispute is precisely the type of dispute Plaintiff agreed to arbitrate. Moreover, there is a close relationship between the signatory, Seaborne Virgin Islands, and the non-signatory, Seaborne Puerto Rico, as Plaintiff even conflates them for purposes of his claims. *See* Docket No. 1. Although Seaborne Virgin Islands is the named company on the employment application and the arbitration agreement, Docket No. 14-1, Plaintiff alleges that Seaborne Puerto Rico is the corporation who wrongfully withdrew his job offer based on his alienage, Docket No. 1. Thus, given the related nature of Plaintiff's claims to the arbitration agreement, and the close relationship between Seaborne Puerto Rico and Seaborne Virgin Islands, under federal common

law, Plaintiff is equitably estopped from alleging that Seaborne Puerto Rico cannot enforce the arbitration agreement.

Under Puerto Rico law, the result is the same, because the arbitration agreement reflects the parties' intent that Plaintiff's claims against Seaborne Puerto Rico be arbitrated, even if Seaborne Puerto Rico was not in existence at the time. Puerto Rico's Civil Code provides that if "the terms of a contract are clear and leave no doubt as to the intentions of the contracting parties, the literal sense of its stipulations shall be observed. If the words should appear contrary to the evident intention of the contracting parties, the intention shall prevail." P.R. Laws Ann. tit. 31 § 3471. Thus, the Court looks to the intent of the contracting parties.

The arbitration agreement here reflects the parties' intent to arbitrate any dispute arising out of Plaintiff's job application against any entity relating to Seaborne. The arbitration agreement establishes that "all claims, controversies or disputes . . . against [Seaborne Virgin Islands], its *shareholders or subsidiary or parent or affiliated companies*, and their and [Seaborne Virgin Islands'] officers, directors, employees, and agents . . . shall be resolved solely and exclusively by arbitration . . . ." Docket No. 14-1 (emphasis added).

Plaintiff does not contest that Seaborne Puerto Rico is a subsidiary or affiliate of Seaborne Virgin Islands. Docket No. 30-1 at 9-10. Instead, he argues that since Seaborne Puerto Rico was not incorporated at the time of the agreement, the agreement cannot be applied to them retroactively. *Id.*[2] The Court disagrees.

---

[2] Plaintiff signed the contract on November 8, 2013, Docket No. 14-1, and Seaborne Puerto Rico was incorporated December 11, 2013, Docket No. 15-1.

First, Plaintiff does not provide any support for this argument.[3] Second, Plaintiff's argument is contrary to the broad language of the agreement and the parties' intent. Although the agreement's plain language does not specifically include entities that may be created post-agreement, neither does it specifically limit the agreement to entities already created. Moreover, the language evinces a broad intent that Plaintiff be required to arbitrate claims against a variety of entities associated with Seaborne Virgin Islands, not just that specific entity. This suggests that the parties' intent was for Plaintiff to arbitrate any claims that would arise against any "subsidiary or parent or affiliated compan[y]" of Seaborne Virgin Islands, even those that were not yet in existence. Thus, under Puerto Rico law, Seaborne Puerto Rico can enforce the arbitration agreement.

Accordingly, Seaborne Puerto Rico can compel Plaintiff to arbitrate his claims, even though it is not the entity that signed the agreement.

### c. Estoppel

Plaintiff's estoppel argument is easily dismissed, as it depends on two conditional events that never came to fruition. Plaintiff argues that Defendant is estopped from enforcing the arbitration agreement in his job application, because it was substituted by the one-page employment offer that Plaintiff signed. Docket Nos. 15, 30-1. The "Consent and Acknowledgement" section of the employment application states that "*if an employment relationship is established*, it will be governed by a written employment contract, and . . . *if a written employment*

---

[3] To the contrary, the Puerto Rico Supreme Court has allowed entities that were formed post-contract to enforce a contract. *See, e.g., A.L. Arsuaga, Inc. v. La Hood Constructors, Inc.*, 90 P.R.R. 101, 1964 PR Sup. LEXIS 231 (P.R. 1964).

*contract is entered into* between the Company and me, the terms of such a contract will control in the event of a conflict with any Company policy, guideline, or communication" Docket No. 14-1 (emphasis added). Pursuant to this clause, Plaintiff then argues that after Plaintiff signed the one-page offer letter on December 23, 2013, any dispute between the parties would have been governed by this offer letter—which does not have an arbitration agreement—instead of the employment application Plaintiff had previously signed. Docket No. 15, 30-1.

Assuming *arguendo* that a valid written employment contract would have substituted the employment application in all respects,[4] Plaintiff's argument fails because the two conditions needed for this to happen never occurred. The "Consent and Acknowledgement" language Plaintiff relies on is clearly conditioned on the occurrence of two events: the parties 1) establishing an employment relationship, and 2) entering into a written employment contract. *See* Docket No. 14-1. Neither of these conditions occurred. The offer-letter signed by Plaintiff is just that—an offer-letter. It is not an employment contract. In fact, it makes clear that the offer is contingent on Plaintiff meeting all of Defendant's requirements and "*signing a two year employment contract*." Docket No. 15-1 (emphasis added). Since the conditions outlined in the offer-letter were not met, an employment relationship was never formed. Since an employment relationship was not formed and a written employment contract was never signed, the obligation conditioned on these two

---

[4] The Court severely doubts this would be the appropriate construction here, as the relevant language—that "the terms of [a written employment contract] will control in the event of a conflict with any Company policy, guideline, or communication," Docket No. 14-1—more appropriately indicates that the employment contract would govern certain disputes arising from the employment relationship, not that it would substitute the employment application in all aspects. Regardless, the Court need not decide the specific construction of this language.

events—that any dispute with the company would be governed by the employment contract—never came into fruition. *See Raytheon-Catalytic, Inc. v. Gulf Chem. Corp.*, 959 F. Supp. 100, 105 (D.P.R. 1997) (a conditional obligation only comes to life if the condition is fulfilled).

Accordingly, Defendant is not estopped from enforcing the arbitration agreement in the employment application.

## CONCLUSION

In view of the foregoing, Defendant's Motion to Compel Arbitration is GRANTED. Additionally, Plaintiff's claims are dismissed and Plaintiff is ORDERED to arbitrate his claims in accordance with the arbitration agreement.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 17th day of February, 2017.

/s/ Jay A. Garcia-Gregory
JAY A. GARCIA-GREGORY
United States District Judge